UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CARLA D HALL** | **CASE NO.  3:21-CV-02680** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **LASALLE MANAGEMENT CO ET AL** | **MAG. JUDGE MCCLUSKY** |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (R. Doc. 79) filed by the defendants, LaSalle Management Company LLC ("LMC"), Jackson Parish Sheriff Andy Brown ("Sheriff Brown"), and Warden Tim Ducote ("Warden Ducote") (collectively "Defendants").  The plaintiff, Carla Hall ("Nurse Hall"), filed an Opposition (R. Doc. 86), and Defendants filed a Reply (R. Doc. 99).

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**, and Nurse Hall's claims against Defendants are **DISMISSED WITH PREJUDICE.**

### I.     BACKGROUND

This is an employment discrimination case brought by Carla Hall, a former nurse at the Jackson Parish Correctional Center ("JPCC").[1]  She brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and under 42 U.S.C. § 1981–1983, against her former alleged employer(s) Sheriff Brown, Warden Ducote, and LMC (a private company that manages the JPCC).[2]  Nurse Hall,

---

[1] R. Doc. 30 at 1, 3.
[2] *Id.* at 1–3.

an African-American female, alleges that she suffered racial discrimination during her employment with Defendants, leading to constructive demotion, retaliation, and, ultimately, a constructive discharge.[3] Specifically, Nurse Hall alleges that she was underpaid, under-supported, and overworked as the concurrent Director of Nursing ("DON") and Health Service Administrator ("HSA") (together, the "DON/HSA") at JPCC.[4] As DON/HSA, Nurse Hall claims that Defendants failed to give her the necessary (and apparently customary) support staff, which caused her to "work much longer hours," and led to "intolerable conditions," so she resigned to a lesser role.[5] Once she resigned from the DON/HSA position, Nurse Hall contends that her white replacement, Jessie Rieson ("Nurse Rieson") was paid the "correct market rate" and "quickly" provided the support staff that Nurse Hall originally requested.[6] Furthermore—according to Nurse Hall—Nurse Rieson unleashed a wrath of racial terror as DON/HSA by "firing blacks and replacing them with less qualified white employees"; giving white nurses the easy jobs which allowed them to leave early; questioning nurses' treatment of black prisoners; unequally treating black prisoners; not letting black nurses into the nurse's office; applying a new cell phone policy, leave policy, and dress code unequally; and enforcing "discriminatory grooming codes for inmates such as requiring beards to be shaven *even for those with diabetes*."[7] Nurse Hall contends that when Defendants were faced with her complaints regarding Nurse

---

[3] *Id*. at 11–13
[4] *Id*. at 3–4.
[5] *Id*. at 4.
[6] *Id*. at 5.
[7] *Id*. at 5–6 (emphasis added).

Rieson, she and the other black nurses were "hollered at" and threatened with termination.[8] Finding Defendants' workplace unbearable, Nurse Hall resigned and filed the instant suit.[9]

At the motion to dismiss stage, we whittled Nurse Hall's claims to only those legally cognizable against each defendant, dismissing: (1) the §1981–1983 claims against LMC, (2) the claims against Sheriff Brown in his individual capacity, and (3) the official-capacity, Title VII, and retaliation claims against Warden Ducote.[10]

Defendants filed the instant Motion, arguing that Nurse Hall lacks evidence supportive of her claims of discrimination.[11] In their Motion, Defendants discuss each of the alleged discriminatory acts that Nurse Hall suffered and explain why the acts either are not discriminatory or are not supported by the record.[12] Nurse Hall filed an opposition brief[13] arguing the opposite, and Defendants replied[14] with further clarification. We address these contentions below.

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[8] *Id.* at 8.
[9] One of Nurse Hall's contemporaries, Diwanetra Hill, filed a separate lawsuit arising out of these same events. *See Hill v. Brown*, No. 3:21-CV-2516, R. Doc. 1 (W.D. La. Aug. 16, 2021). We address her claims only insofar as they are pleaded in this suit, however.
[10] *See* R. Doc. 34: R. Doc. 35.
[11] R. Doc. 79.
[12] *See generally id.*
[13] *See generally* R. Doc. 86.
[14] *See generally* R. Doc. 99.

summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

### III.   ANALYSIS

While Nurse Hall brings her employment discrimination claims under Title VII, §1981, and §1983, the same evidentiary framework—the Title VII framework—

applies to each of her claims, so we start there. *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

Under Title VII, a plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). Where, as here, the plaintiff offers no direct evidence of intentional race discrimination, we analyze the claim under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy*, 492 F.3d at 556; *see also Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272-73 (5th Cir. 2006). "Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing a prima facie case of discrimination. If she does so, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. If the defendant can provide a reason, then the burden shifts back to the plaintiff to prove that the reason is pretextual." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). (internal quotation marks and citations omitted).

To make out a prima facie case of race discrimination at the first step of *McDonnell Douglas*, a plaintiff must demonstrate that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556 (citation omitted); *see also Hamilton*, 79 F.4th at 506 (defining "adverse employment

action" for Title VII purposes). As each of Nurse Hall's claims are contradicted by the record, fail elements (3) and (4) of the *McDonnell Douglas* framework, or both, her case must be dismissed.

### A. Forfeited Claims

As a matter of primacy, any claim against LMC must be dismissed. Defendants point out Nurse Hall's lack of evidence supportive of an employment relationship with LMC and provide evidence disproving such a relationship—evidence which Nurse Hall has failed to rebut. *See* R. Doc. 79-3 at 3, 271–72. Accordingly, summary judgment dismissing LMC is appropriate. *See Stahl,* 283 F.3d at 263. Furthermore, Nurse Hall voluntarily withdrew her constructive demotion and unequal pay claims. *See* R. Doc. 86 at 18 n.2, 45. So, all that remains are her claims for a "hostile work environment, retaliation, and constructive discharge." *See id.* at 45.

### B. Hostile Work Environment and Constructive Discharge

Nurse Hall contends that she was subjected to a hostile work environment by Defendants, eventually culminating in her constructive discharge from her position at JPCC. R. Doc. 30 at 11. For a hostile work environment to be actionable under Title VII, "the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "A hostile-environment *constructive discharge* claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable

person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146–47 (2004) (emphasis added); *see also, Jurgens v. E.E.O.C.*, 903 F.2d 386, 390 (5th Cir. 1990) (internal citation omitted) ("The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.").

Nurse Hall was plainly not the victim of a hostile work environment—or a constructive discharge. The record evinces no act or acts severe or pervasive enough to have altered the conditions of her employment, let alone forced her involuntary resignation. But to be certain, we will briefly address each—and the whole.

1. *Nepotism*

Nurse Hall accuses Nurse Rieson—her replacement as DON/HSA—of having hired friends and family when given the chance. *See* R. Doc. 30 at 9. Nepotism—even when it leads to same-race hiring—is not employment discrimination under Title VII. *Harville v. City of Houston, Mississippi,* 945 F.3d 870, 876–78 (5th Cir. 2019). Furthermore, as DON/HSA herself, Nurse Hall effectuated the hiring of those with which she consorted—from her racial group—fomenting the same "nepotism" that she now decries. *See* R. Doc. 79-3 at 241, 242, 346, 347.[15]

---

[15] Much of the evidence cited by Defendants in their Motion was miscited or inordinately difficult to find, with deposition cites proving especially offensive. *See, e.g.,* R. Doc. 79-2 at 34–35. The Fifth Circuit has assured that "Rule 56 does not impose upon the district court a duty to sift through the record in search of [summary judgment] evidence […]" and we find that especially true for the movant, as Defendants are here. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). We won't sift again.

### 2. *The Video*

Nurse Hall complains that she, along with the other prison staff, was required to watch a training video with "background music contain[ing] racial slurs, like [the n-word], and had no relevance to the training." R. Doc. 30 at 7. The training was about prison rape and the video was about prison rape. *See* R. Doc. 79-3 at 552–62; R. Doc. 86-21. Illicit rap lyrics in the background of an HBO documentary about prison rape played during mandatory training about prison rape do not constitute actionable discrimination under Title VII. *See Meritor*, 477 U.S. at 67. It is thus an incredible leap for Nurse Hall to equate this incident to cases where supervisors and/or coworkers use the n-word. *Compare* R. Doc. 86 at 31–32 (citing *Ash v. Tyson Foods, Inc.*, 546 US 454, 456 (2006); *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). No reasonable jury could find this training video incident to have created a hostile work environment. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (cleaned up) ("This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in *Meritor*, mere utterance of an ... epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.").

3. *The Rest*

Nurse Hall abandoned her unequal pay and constructive demotion claims, but because the facts surrounding those claims are closely related to her claim for a hostile work environment or constructive discharge, we will briefly address them here. *See Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338 (5th Cir. 2014) (listing "reduction in salary" and "demotion" as acts that could support a claim of constructive discharge). Nurse Hall was not underpaid or paid less than Nurse Rieson. *Compare* R. Doc. 79-3 at 1 *with id.* at 176; *id.* at 12 *with id.* at 184. Nurse Hall was not demoted by Defendants. *Id.* at 47, 57, 79, 211, 212, 322, 325, 675, 682, 694. She was not undermined for the benefit of Nurse Rieson. *See id; see also id.* at 222-23, 240–55. Her mental health nurse position was one she chose. *Id.* at 13, 57–58. And the changes it meant to her work life at JPCC do not give rise to a hostile work environment claim. *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th. Cir. 1997). Ultimately, "The burden [is] on the employee to prove constructive discharge," and Nurse Hall cannot. *Jurgens,* 903 F.2d at 390.

**C. Retaliation**

Nurse Hall also makes a claim for retaliation under Title VII. *See* R. Doc. 30 at 11–12. Just as above, the *McDonnell Douglas* test is applicable to Title VII unlawful retaliation cases. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e–3(a) by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link

9

exists between the protected activity and the adverse employment action. *See Stewart v. Mississippi Transp. Comm'n,* 586 F.3d 321, 331 (5th Cir. 2009).

Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, the plaintiff must then offer evidence that (1) the defendant's reason is not true but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). *See Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004); *Smith v. Xerox Corp.*, 602 F.3d 320, 330–33 (5th Cir. 2010). However, according to the Fifth Circuit, "[a] plaintiff can only avoid summary judgment on but for causation by demonstrating a conflict in substantial evidence on this ultimate issue." *Nunley v. City of Waco*, 440 Fed. Appx. 275, 280–81 (5th Cir. 2011) (cleaned up).

We have already determined that Nurse Hall was not subjected to an adverse employment action. *See ante* at 7–9. But even if the slights she cites constitute adverse employment action(s), most occurred prior to her reporting concerns to Defendants, and after she left the DON/HSA position. *See, e.g.,* R. Doc. 79–3 at 92–95. Those slights occurring *after* Nurse Hall's complaints are more unfit still. An excerpt from her Opposition to this Motion sums up the issue here: "She stayed longer to get her exit covered with a new job and because the Sheriff talked her into staying

10

saying things would be better but they never were. She felt as though she was threatened with being fired." *See* R. Doc. 86 at 42 (citing R. Doc. 86-10 at 7–8). This makes no sense. It is the testimony of Nurse Hall—meant to buttress her claim and defeat summary judgment—that the man she alleges retaliated against her, in fact, begged her to stay. *See* R. Doc. 86-10 at 7–8. Because she suffered no adverse employment action, let alone an "[il]legitimate, []retaliatory" one, she has no retaliation claim either. *Aryain,* 534 F.3d at 484.

## IV. CONCLUSION

For the foregoing reasons—because Nurse Hall has shown no disputed material fact supportive of a claim for the violation of her rights under any theory—Defendants' Motion for Summary Judgment is **GRANTED**. Accordingly, Carla Hall's claims against LaSalle Management Company LLC, Jackson Parish Sheriff Andy Brown, and Warden Tim Ducote, are **DISMISSED WITH PREJUDICE**. A judgment consistent with this ruling will be issued forthwith.

**MONROE, LOUISIANA**, this 3rd day of January, 2025.

_____
Terry A. Doughty
United States District Judge